Morning, Scott from Lincolnship. I'm here on behalf of Mr. Lebourgeois. I'd like to reserve five minutes for rebuttal. This is an important case. This is a case that is not going to just affect Mr. Lebourgeois, but could have some broad sweeping effects on the entire body of civil rights law. At this point, no Supreme Court, Ninth Circuit, or Washington Supreme Court case approves the shortening of the statute of limitations for a statutory civil rights claim. In fact, the US Supreme Court in Burnett made clear that six months, under the reasoning of that, was offended and basically was manifestly inconsistent with the federal discrimination law of 1981. Do we need to get to that groundbreaking kind of ruling, or isn't it enough to say that the contract he signed didn't apply, by its very terms, to an employment discrimination claim? It only applied to contract actions. I think that either, I think we could get to both, but I believe that the contract language is confusing, too confusing to be enforceable, too ambiguous to be enforceable. Clearly the parties were confused, and there's even inconsistent conduct by the defendants that show that the contract is ambiguous. Although I think it's important, looking at the Circuit City cases and the Washington case of Adler, that you have that this time period, six months, is uncautionable and should be stricken, and I think it's important that the court state that emphatically. But I do believe it didn't look ambiguous to me. I mean, it looked to me like they're talking about two different things in this contract. One is the agreement, the other is the employment relationship, and the limitations period deals specific with actions arising out of the agreement, and not the employment relationship. End of story. I wouldn't disagree with that. What is, I guess, ambiguous is the way the court attempted to apply it, or the way the defendants are attempting to apply it. In fact, if you look at page 15 and page 32 of the defendant's brief, they're interchanging the word disagreement with employment relationship, and the reason they do that is because you almost have to, because disagreement is pretty clear, that that would just deal with the underlying wage claim, and not discrimination claims. And if you look at the waivers in the Circuit City cases, you've got specifics that talk about examples. You know, the DNA specifies job applicants agree to settle all previously unasserted claims, and they even go by way of example of talking about certain statutory claims, such as Title VII in the Civil Rights Act of 1981. So, I don't agree with that. Do you agree that to get a 1981 claim, it has to be anchored in contract? I don't agree with that. You don't? What about the 1991 amendments? Doesn't that pretty well direct you towards that? The 1991, I guess, what you say grounded in contracts, the way the case law has interpreted that is that just going to work, and working, and getting paid is a Mr. Le Bourgeois could completely not have any type of written agreement with his employer, and you could just process that out the window, and he would still have a 1981 claim. Well, neither Jones nor Manette, when you read them, I don't think takes you all the way to the position you want them for. Is there some case more directly on point that says you don't have to have it anchored to contract? I think, though, in practice, there are so many cases where you don't have any underlying contract, where you have at-will employees with no contract at all, and I think that the 1991 Civil Rights Act, in overruling Patterson, specifically overruling Patterson, that required a contractual relationship... Well, you rely on Jones and Manette. Yes. And Jones didn't suggest a written employment contract was unnecessary. He just simply didn't mention either way whether the contract existed between the parties, and Manette, a case that I'm personally familiar with, because I sat on it, we held there that, and conditions of the contractual relationship employment is therefore actionable under Section 1981. I'm not sure that Jones and Manette take you to the anchoring contract, especially after the amendments. Do you have a closer case that will help you? Not off the top of my head. That's especially true here, where there is, within the contract that we have before us, there's a merger clause, which indicates that that contract is all there is. There isn't anything else aside from the contract. So I'm not sure where that is in this case, or whether it really is a 1981 case that's outside the written contract itself. Well, I don't think that, based on the language of the contract we're referring to, that the fact that it says within this agreement that that would somehow, you know, in a contract it needs to be mutual assent. I think there's no way that Mr. Labourgeois could have read that contract, understood somehow he was about statutory history or the language of the statute. There's nothing specific there that even references him to it. In the district court, wasn't your position and the position of your client that it was a contractual claim? It was repeatedly acknowledged, as I read the record, that this is a contractual basis for this claim. There is a contractual basis for the claim, but the contract is not based on this contract that he signed. It's based on just the steps from 1991 where you have the right to basically be free from discrimination and harassment as part of your daily life as an employee. But 1981 has to do with contracts, the ability to enter into contracts free. That was what it was for in the civil rights and hasn't changed since. And you indicate this is a contractual claim, but it's some written contract? What I'm saying is you wouldn't need the written contract in order to have a contractual relationship that would lead to a 1981 claim. There could be no contract at all and you would still have a claim under 1981. There's not a requirement that there be a written contract in order to have a 1981 claim. That's what I'm saying. But if you look at the unconscionability issues here, the six months is clearly not conscionable. That's a different issue. I understand your argument there about the six months. You still have to show that it's reasonable restrictions and that he agreed to them, that he voluntarily agreed to them and that they're reasonable. I understand that. I just didn't understand your part of your claim. It seemed to me that you were indicating in your brief that there's something different from the written contract and that you can have something floating out there that's not anchored to a contract. And I had problems with that issue. You may be right, but I didn't find the cases that substantiated it. Well, I guess what we're saying, Your Honor, is that you wouldn't need a specific written contract in order to have a contractual relationship with an employer. And if the provisions in this contract are void or there's no mutual assent or meeting of the minds. I didn't mean to dissuade you from your six month issue. I just wanted to make sure I knew where you were on that. Sure. Thank you. I think that there's different bodies of case law that discuss ways in which these contractual limitations can be invalidated. And one, of course, is unconscionability. And the recent cases that have come down, particularly the Adler case, is important to the court's interpretation here. Because in Adler, the court found a 180 day limitation to provide notice to arbitrate substantively unconscionable. The court basically said, quote, therefore we hold the 180 degree limitation provision in the agreement unreasonably favors Fredlund manner and thus substantively unconscionable. And that basically, the reasoning they use is the same reasoning that the court relied on in the Circuit City cases. And that was the recent case that came down that Judge Pires was on the panel. But basically, that a six month statute of limitation could be interpreted to provide plaintiffs with the benefit of the continuing acts doctrine. And that certainly would happen here with Mr. Le Bourgeois, who was asked to repeatedly sign multiple contracts, which effectively could be interpreted to preventing him from arguing the continuing acts doctrine. The court also discussed that that type of limitation effectively can force plaintiffs to forego the investigation and mediation opportunity by the EEOC or the Washington State Human Rights Commission. And all that reasoning that the Washington Supreme Court utilized in Adler applies here and is important here in the sense that all those arguments apply to Mr. Le Bourgeois. Here you have a similarly short period of time. And then we have the Ninth Circuit in Alstaff versus Circuit City saying the same thing. Interestingly in Adler, it was clearly a bilateral contract. So these either party had a certain time period in order to bring their claims. And there's also, on top of unconscionability, the court says that parties cannot stipulate to a shortened limitation if the statute of limitation violates public policy. That's the courts of that in Wolfson and Harriman. And all parties, I think, admit that there's a reasonable standard. Now we believe the reasonableness standard in a statute of civil rights claim should be extremely high, that the court should not allow a limitation of a situation where you have an employer-employee relationship and you've got inequity of bargaining. But looking to the Supreme Court in Burnett, the court in Burnett found a six-month limitation quote, manifestly inconsistent with the central objective of the reconstruction era civil rights statute, which is to ensure that individuals whose statutory rights are abridged may recover damages for secure and zonkable lease. Well, yes, Burnett holds that. But in Burnett, there was an administrative process they had to go through. And the Supreme Court looked at it and said, look, with that administrative process in there, six months just doesn't make sense. But we don't have that here. We've got a six-month with no administrative process. Doesn't that change a little? Because Burnett gets you all the way home on that, especially in cases like our Solano case, although it was a state case. That was a six-month case. We didn't find anything wrong with that. OK. And I can address first. I don't think Burnett was saying that we need to distinguish 1981 from an administrative claim where you can merely, the court says, where you can merely show up and have an agency assist you with the process. Part of the reason six months the Supreme Court said in Burnett was unreasonable was, or manifestly inconsistent, was that you have to hire a lawyer, prepare a pleading, assess damages. But moving on to the the... That's true. But the administrative process was the key to Burnett. Look at Solano, which was a six-month for a seaman. And it's true, you can distinguish it because it deals with California law. But it is Ninth Circuit law, and we have to look to the principles that a seaman's experience in high school education certainly could read contracts and found in favor of enforcing the six-month contract. Isn't that somewhat closer to what we have now, the principle itself? I think what we have is a lot closer to the Al Safran case and Ingle and Adams, where you basically have the mandatory employment contract that's an adhesion contract. It's put in front of an employee that has disparity of bargaining. You have a history of the civil rights statutes. You have a civil war that's fought over race issues. You have Watts riots over race issues. You've got a much higher policy underlying the statutory civil rights plans than you have over the fair business practice and common law in California. How long do you have to file an EEOC charge from the Title VII case? In this state, 300 days. 300 days? 300 days. Some places it's, what, 120 days? 180 days. 180 days in other states, but the court in Burnett really rejects the same kind of arguments that Marilyn was making about that, about trying to do an analogy between an administrative filing and an EEOC charge. If you don't file your EEOC charge with 180 days, where the 180-day limit applies, you're out, right? You file a 1981 claim if it's a race claim, or you file your state claim if it's a... Title VII case is gone. That's true. But I think that that's different here because the burden of filing an administrative claim is much lower as the court discussed, as the Washington Supreme Court discussed in Adler, much lower than actually filing an actual lawsuit, finding counsel. You can essentially pro se file an administrative claim. You can pro se file a complaint, but I think the court is familiar with what results in that situation. Also, a contractual limitation will not be upheld if it undercuts a statutory objective, and that's a lot of what you've got in the Graham-Oyle case, where the Ninth Circuit said, look, we're not going to allow 180-day statute of limitations because that undercuts a statutory objective. A reasonable period of time to seek relief for improper terminations and other abrupt abuses by the petroleum franchisors. Here we have broad, sweeping civil rights statutes that are there because we don't trust that business can, on its own, avoid discriminating. Congress passed these acts because we don't trust that people can contract freely without statutory oversight. It turns the whole thing on its head if we allow the freedom of contract to basically shorten the window of opportunity to file these important, significant statutory claims. In your argument in your brief I read last night, you said that the six-month is unconscionable. I read it again, I guess, before. It's unconscionable. Would one year be unconscionable? One year would be unconscionable as well. And two years? I think my, I think that any, I think clearly one year would be. I think two years was at least the shortest of any state when they had before, before R. R. Donnelly. Two years would not be unconscionable? I think two years could be unconscionable when you're talking about these statutory civil rights claims. Three years? I think it should be four years because in R. R. Donnelly the court spoke with respect to these race discrimination claims. Congress has now spoken. In R. R. Donnelly the court said an amendment. Isn't the point that we have to draw a line and then a line has to be drawn and then we determine whether it's reasonable? That's the principle that's involved. And I guess I would argue that, that, that the, it's not reasonable to limit statutory civil rights, especially race discrimination cases considering the history of our country and the genocide that's going on in this world. Your client was hurt within six months. He was able to find a lawyer and file a case. Who was able to? Your client when he was hurt, physically hurt. And that's a lot more obvious than a, than a, than a, a race discrimination case and the fact that Seaman know that if they injure their hand, that they get a lawyer and they get help. I, I don't think that... In Solani we, we upheld a six month. We didn't find that was unconscionable. You did though find that one year was unconscionable in three circuits, four circuit city cases and, and those were statutory civil rights cases. I think, again, you have to look at the underlying policy objectives. I think common law unfair business practice act does not rise to the same level of protection that these, the 1991 acts, which are broad sweeping that are changing the workplace for the better, that are allowing, I mean, I worked on a case in 1986 where there wasn't a single FBI agent above the special agent level. That was 1986. We've got a long way to go, but these laws have done a lot to move society forward. We have to undermine and unwind what Congress has passed. Let Congress, let Congress say, uh, and, and you know that it would never happen. Let Congress get before their constituencies and say it's okay to waive a 10 or six month statute of limitation. Let, let, let Congress hasn't done this. Congress, in fact... Congress says it can't go over four years. Right. Congress says... It can't go over four years, but you can go under four years. You want Congress to draw that line? I don't think Congress has drawn the line. I think Congress has said four years now, and that's where the line should be. I think what it says, it says no later than four years. Are you suggesting that this case is, is we should reverse it? Not because six months is, is unconscionable, but because it has to be four years in every contract? No, I, but I would say that, that Taylor and these cases are inapplicable when they relied on the fact that Congress hadn't spoken. Uh, but I, I don't think that's the basis that the court... Well, Taylor, Taylor did say that, but Congress spoke in 1991 when they amended it. The amendment was after Taylor. That's true. But I'm saying that's a way of distinguishing Taylor. And, and also these cases relied on underlying state law that, that later bared out not to be true. But, but I think that the policy, the policy reasons for these statutory civil rights claims are so, are so significant that, uh, if you're, if you're going to draw a line for reasonableness, it needs to be, it needs to be much more than one year or six months. And I think that, uh, Ninth Circuit case law is clear on that. I also think that under Luce Ford that, that these kind of claims are retaliation per se, because they're in fact, uh... If I understand your position, even if your client actually willfully wants to have a job, he can't endure, can't do such a contract. I think, uh, uh, that, uh, uh, in the congressional record is, is, is clear with quotes like this, but that the American worker should not have to choose between his job and his statutory civil rights. That's a quote. But during the 1991 Civil Rights Act, it's in, it's in Pregerson's dissent in the Luce Ford case. Um, of course, he's going to want his job. He'll probably do anything. He'd probably agree to one week. Does he really want to? There's such a disparity of bargaining power and such strong policy reasons that no, he should not be able to want to. When it means want to, it means put food on his, on the table to feed his family. There, he should not have the choice to make that choice. Now, if we're talking about a commercial contract, we're talking about parties, uh, a non-adhesion contract, we're talking about parties of equal bargaining power, sure, they should be able to restrict the statute of limitations, unless it undermines the statutory, undercuts the case law. Thank you, Mr. Blankenship. Good morning, Your Honor. May it please the Court. My name is Gail Loon. I represent Rebecca Irene Fishery, um, LLC, uh, ATK, US, LLC, and Maris Vlasnicheski in this case. Because 42 USC, section 1981, this is a case where it does not create a statutory right, nor does it contain a specific statute of limitations, this Court should affirm the District Court's enforcement of the party's contract and the dismissal of this case on summary judgment. In addition, because the choice of law provision has been uniformly upheld by this Court and it should continue to do so, dismissal of plaintiff's state law claims is appropriate and should also be affirmed. My first point, Your Honor, is, er, er, let me know if you don't hear me if I fall back from the microphone. Um, my first point is that 28 USC, section 1981, did not, from 1864 until 1991, have a statute of limitations. Courts were required to engage in an analysis of what was the most closely analogous state statute of limitations to determine what was noticed before you could determine whether the claim was timely filed. In 1991, with the amendment of 28 USC, section 1658, basically what Congress said was that where there isn't already a statute of limitations for federal claims arising under federal law, four years is the catch-all. It is the safety net. And that will catch all of these other claims if we haven't given you a specific statute of limitations. But the premise here is that all of the authority that appellants rely upon turns on whether or not this is a statutory right or not. Did 42 USC create a right that didn't previously exist? And the answer is no. Section 1981 simply affirmed to all the world that regardless of race, you have the same right to make and enforce contracts regardless of your race. All that did was to make a pronouncement that indeed... Well, the statute of limitations limits that right, doesn't it? Yes, it does, Your Honor. It limits the right. And statutes of limitations apply to all claims that arise under federal or state law. But yes, it does. But the difference between a statute of limitation impairing or impeding a statutory right versus a common law right or a constitutional right... I mean, there are distinctions and there are separate bodies of case law that apply to those. What appellants have been relied on is exclusively that line of cases that says, when you have a statutory right, a right that wouldn't exist but for the statute, then in fact, you cannot shorten it by contracting for a different limitation period. But it's really that plus. And the plus is that it's dealing with racial discrimination that Section 1981 and the 13th Amendment tend to... were adopted to... That's correct. As a matter of practical matter, Your Honor, the differences between a Section 1981 claim and a Title VII claim, and I don't mean to be preaching, I know you all know this, is that with a Title VII claim, it's not simply restricted to race. You don't have an exhaustion requirement. And if you did have to bring your claim under Title VII, you have a 180-day time frame within which to assert that. And only if you have pendent state law claims does it extend to 300 days in Washington State. Judge Silverman asked a question right at the outset by looking at the contractual agreement itself and the way you read the agreement. And he asked counsel, can't we just decide this case by looking at the terms of the contract? Now, I noticed when I read the briefs and I read the argument before the district court that you sort of kind of rewrote this contract a bit because you referred to it as a restriction on the employment relationship. You used those words to characterize what the limitation, what this restriction was, if I'm not mistaken. I don't recall that particular provision. I reread oral argument yesterday as well, Your Honor. But in the brief, in the briefs here too, you used the term employment relationship. And if you read this clause, the dispute clause very carefully, the disagreement and the employment relationship shall be governed exclusively by the general maritime laws of the United States and applicable United States statutes. And then RIF and crew member agree, expressly agree that their respective obligations, rights and remedies with respect to the employment relationship. Okay? Then if you go down to the very bottom, crew member and RIF agree that any legal action arising in connection with this agreement must be commenced within six months after the expiration of this agreement. And in the district court and in your brief here where it says disagreement, you change it to say the employment relationship. Now, I didn't realize I had, Your Honor. Let me grab a copy of the contract so I can check that very quickly. So we can't compare. Let me just read the paragraph. Well, I'm just going to, you know, it's on the last page. It says the dispute clause. Right. Twenty. Right. The very last clause. Crew member and RIF agree. Agree that any legal action arising in connection with this agreement. Yes. And in your briefs and before the district court, that, you change that to say, maybe you did it inadvertently. In our, perhaps I did, Your Honor. But you changed it to say employment relationship. There is an employment relationship that arises from this contract, Your Honor. They are employees and we are the employer. So there is an employment relationship. When I make the argument that this applies to all claims arising from the employment agreement, I get that authority from this paragraph, from the part where you stop reading at the top of the paragraph, which says RIF, Rebecca Henry Fisheries, and crew member expressly agree that their respective obligations, rights, and remedies with respect to the employment relationship established by this agreement and all disputes of whatever nature arising out of this employment relationship shall be governed exclusively by such federal law and shall not be enlarged, supplemented, or modified by the laws of any state or local jurisdiction. Now, there is some ellipses here where I just leave out designations. Okay, but you talk about the employment relationship with respect to the choice of law provision. You've just read the choice of law sentence. Correct. Okay, when you get down to the limitation, it only refers to the agreement. Disagreement. Disagreement. Yeah, disagreement. And I take the entire paragraph in context as did Judge Zille. And I agree with Judge Zille's reading of this paragraph. And obviously, I didn't see the inconsistency that you all seem to see here. To me, it seems very clear that anything arising out of this agreement, which creates the employment relationship Let me ask you, look at the first sentence of that. Disagreement and the employment. Why are there two things referenced there? Having not drafted this paragraph, Your Honor, I'm not sure I can respond to that question. Well, we're sort of stuck with it whether you drafted it or you didn't. Correct. It talks about two different concepts. One is the agreement, and the other is the employment relationship established here under. And then it goes on later to talk about the employment relationship with respect to the choice of law provision. And then to the agreement with respect to the limitations period. As a matter of contract interpretation, Your Honor, I think you have to take the entire paragraph as a whole and the entire agreement as a whole. So to a certain extent, parsing out just paragraph 20 and not looking at paragraph 1, which creates the employment relationship and as far as a site to the executive record. Wouldn't that at the very least be ambiguous? I don't believe so, Your Honor. I think that when you look at the four corners of this Well, that's great. You didn't draft it. You don't understand why it was worded this way. I deserve that, Judge. Well. But I can interpret it. And when I do, I don't see the ambiguity that you see. And in part because so many of these contracts, including this one, are so commonly used in the industry to do both of those things, to create the employment relationship, but also to comply with federal law. Federal law requires them to do that. Absolutely. 46 U.S.C. 10601 requires that this employer enter into a contract with each of its employees on a fishing vessel that satisfies certain statutory criteria and some additional common law criteria that have arisen over the years. So consequently, I think that you have to put it in context, if you will, that if you're going to find an ambiguity, now we get to look outside the four corners. And if we look outside the four corners, what we see is industry practice and industry standards. What evidence of industry practice was there? I think Judge Zille's experience. Probably he can take judicial notice of the industry practice. Did he take judicial notice? I think he found the paragraph to be unambiguous, Your Honor. Just so I'm clear, there was no extrinsic evidence offered, was there? Correct. But contract interpretation law would point you back to the entire contract. You mentioned the federal law. Congress requires that seamen have this kind of agreement. To what extent does maritime law inform our understanding of this paragraph? Of the dispute resolution clause and the statute of limitations. How does it interpret this agreement? I think it influences the interpretation of particularly the dispute resolution clause and the need to bring claims in a timely fashion. Specifically, you will note that this plaintiff signed not one, not two, nine of these contracts over a course of years. This is an industry that is highly mobile. It is not, as appellant's counsel indicated, a situation where the guy has to take the job because there isn't another one out there. And fishing companies go searching, recruiting, and trying to find employees for these jobs all the time. It's very easy for an experienced fisherman to change companies and very common for a fishing experience to change employers. We also get our people from all over the globe as well as all over the country. Witness, Mr. LaBourgeois, is from Louisiana. Let me ask you, let me be a little more specific. Is there anything about, you know, in maritime law, seamen are given added protection? Correct. Correct? In the relationship with the employer. Yes, that's correct. So to what extent do those principles help us in understanding or in interpreting this agreement? You're pressing it, Your Honor. I was struggling with this question myself last night on the train back at 11 p.m. I think that in most respects, you have to take that element out of this. This is not a seaman's claim for personal injury, for genocidic negligence, or unfavorableness. This is a claim under Section 1981. The six-month statute of limitations, or limitations provided for in the contract, is premised on the fact that the mobile workforce will prevent us from being able to do an effective investigation and defense in the event that a claim arises outside of that time frame. Where this comes down is in many respects, it is not important that he is a seaman, and in fact to a certain extent it is irrelevant that he is a seaman. He is an employee of an employer. He has a written employment contract which says we have a handbook that you agree to read and which he signed an acknowledgment for. We have an anti-harassment policy. We make these promises to you. You keep promises to us, and this is our agreement. And one of those promises is that if either of us has a problem under this contract and under the employment relationship created by this contract, we will stress that in some legal manner within six months of the extinguishment of this contract. Which leads me to my next point, and that is that the distinction between the Circuit City line of cases and even the Alcifer case decided quite recently is that those cases provide or have involved contracts that do several things. One is which they are heavily one-sided. They are not at all bilateral in the same way that these contracts are and this contract is. These contracts set up a six-month limitation period that is subject to equitable tolling. It is subject to waiver and it is subject to estoppel. In addition, I think the law is quite clear, and I just consider it axiomatic, quite frankly, that if somebody files a claim with the EEOC and that is not resolved within that six months, it is a situation where the tolling kicks in. That is a legal action that you have initiated in many respects, albeit an administrative legal remedy that you are seeking, but ultimately what you have is a situation where this could go on indefinitely if you exhaust your administrative remedies timely, wait for the EEOC to conduct its investigation and make findings. This plaintiff didn't just sneak under the six-month window or a 300-day window. This plaintiff waited two and a half years before he came forward with these claims. It is not as though we are sitting here saying we are going to hold you to the six months. What we are saying is we are going to say under these circumstances, we are having a difficult time investigating and finding a defense, and we look at this and say, well, that is because it is so old. It is more than six months. Six months is an objectively reasonable period of time given the industry context. It has also been found... We could raise a laches defense, couldn't we? We could raise a laches defense, and I believe it was fled as an affirmative defense in our answer, Your Honor. We never got to that point on summary judgment, but we did plead a laches defense. The first indication that we had any idea that this plaintiff thought he even might want to pursue some kind of a civil rights claim was when we settled the personal injury claim, and this is all on the record. And that personal injury claim, they requested, it was a different attorney than Mr. Blankenship, Mr. Blankenship was a different attorney, and they asked specifically to have exclusionary language. Now, they are going to argue that that amounts to a waiver. It does not. We didn't believe then and don't believe now, quite personally, that Mr. LaBourgeois is even a person of color. That is a question of fact that the trial court didn't need to get to because he granted summary judgment. So to that extent, what we're faced with here, and I seem to have lost my train of thought here, but basically we did not waive a statute of limitations. We basically said if you believe you have a valid claim for civil rights, you have a right to assert it. We're not paying you to release it because we don't think it exists, and if you want to go after it, we're letting you do that subject to all of our available defenses. So that's where that went. So picking up where I left off, no statutory right was created by Section 1981, which means that parties are able to contract for a different limitations period than that provided for by statute. That being the case, the question then becomes, is it a reasonable period of time, is six months reasonable? This circuit has held on many occasions that six months or 180 days is reasonable. Congress has held on at least two occasions both with Title VII. Which law do we apply in deciding whether or not it's reasonable? I believe you have. Federal common law? Do we look to California law? Do we look to Washington law? Do we look to maritime law? I don't think it matters. Which law do we apply? I don't think it matters where you look. We just pick something out of the air and say. Yeah, that is something of an issue at this point. The question is, do we look at the federal common law that has evolved or do we look at the basic state law, contractual interpretation and construction law? And I think that we have to be careful not to confuse the two. Are we looking at statutory construction and substantive and procedural unconscionability to determine whether this contract is enforceable or are we looking at the underlying state substantive law to determine whether or not to enforce this contract? I think you look to state law to determine whether or not you enforce that contract without resort to the underlying substantive law. In Washington state, even if you do look to the underlying substantive law, the Adler versus Fred something manner, it's a new case to me, there's some troublesome language in there because it purports to tell you, the Ninth Circuit, what you do. And what you have held, and I think they get it wrong. That still being said, they found a one-year limitations period unconscionable primarily because it was so one-sided a contract and it eliminated all of the equitable remedies. To that extent, to hold that this contract is enforceable and specifically its limitations period is enforceable, I don't believe crosses that line of conscionability versus unconscionability. And just briefly a few words on the judgment dismissing the state law claims under the contract. I believe that even if you want to find some ambiguity or do find ambiguity with respect to paragraph 20 of the contract, I believe you still have to uphold that dismissal because the language on the choice of law provision is quite clear. I have approximately a minute left. Let me just review my notes or if you have any further questions. A couple of things that Mr. Blankenship discussed on his opening argument that let me just respond to factually as well as some of the case distinctions that he talked about. He cites Burnett versus Grattan for the proposition that six months is always going to be inherently unconscionably short period of time. As I believe Judge Silverman noted, that is in fact not. If I got the wrong judge, my apologies. It didn't involve a contractual limitations period. It involved an administrative scheme versus a statutory scheme. And it found that it would have precluded somebody from filing an EEOC charge because it had to enforce the state administrative remedy system first. Adler is distinct. I've already covered that one. Section 1981 claims are undisputably, I believe, based in contract. And I believe this contract should be enforced. Thank you very much. Thank you, Ron. Mr. Blankenship, you're really used up all your time. We'll give you one minute in rebuttal. Okay. Just going to keep it to a minute, please. Basically, I think that she's conceded that you would look at underlying Washington law with respect to unconscionability. Every single case the defendant cited to looked at underlying state law. All the FAA cases looked at underlying state law because I don't think there is federal common law interpreting what unconscionability is. And I think that that's where we are with that. Adler did not involve an issue. Adler was a contract. It wasn't about bilateralism at all. It was about the time period being too long. I've got Adler in front of me. There are citations in there that talk about how both Fred Lynn Meyer and both parties had the 180 days to respond, but the period was just too short, unconscionable, and offensive. Also, it's clear that they've waived and none of the parties believed that there was six-month cash limitations for this. You've got the language on the settlement agreement, which carves it out, which is totally inconsistent. And you've got them waiting a year and a half to file a summary judgment motion on this issue. There was no reason to do that if they really believed that there was a six-month cash limitation. That affirmative defense was merely just the catch-all affirmative defense that people throw in with affirmative defenses. With respect to... Thank you very much. Well, the case is disargued and submitted. Thank you. Good afternoon. All rise. This court for this session stands adjourned. No. Thank you.
judges: Wallace, Silverman, Paez